AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>2015 Light Blue Chevrolet Impala, Ohio License Plate of<br>HQS7019, VIN 1G1115SL7FU133306 | )<br>)<br>)<br>)<br>)<br>) |

Case No.  

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* 2015 Light Blue Chevrolet Impala, Ohio License Plate of HQS7019, VIN 1G1115SL7FU133306

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:
The items listed in Attachment B, which is incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21/846 | Conspiracy to Distribute Fentanyl and Marijuana |

The application is based on these facts:

See Affidavit of TFO Kenneth Baker, which is incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kenneth R Baker, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/9/19

_____
*Judge's signature*

City and state:  Cincinnati, Ohio

Honorable Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT B

a. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

b. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs;

c. Cellular telephones, digital telephones, car telephones, or other communications devices which evidence participation in a conspiracy to distribute controlled substances.

d. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

e. Any computer equipment, digital device, magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and any other digital device capable of accessing the internet and capable of being used to commit or further the crimes outline above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes.

f. Financial instruments purchased with currency derived from the sale of controlled substances, including travelers' checks, bonds, stock certificates, cashier's checks, and certificates of deposit;

g. Money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry controlled substances;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

i. Records, items and documents reflecting travel for the purpose of participating in drug trafficking, including airline tickets, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations;

j. Handguns, shotguns and other firearms, and ammunition, which may be used to facilitate the distribution or possession with intent to distribute controlled substances;

k.  Indicia of ownership and use of the vehicles, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, keys and bank account records, registration, title, insurance, and traffic tickets;

l.  Photographs or video movies of drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

m.  Controlled substances, including, but not limited to, fentanyl, heroin, ketamine, or acetyl fentanyl.

n.  Drug paraphernalia, which can be used to store, package, weigh, dilute, and ingest controlled substances; equipment pertaining to fentanyl, heroin, ketamine, or acetyl fentanyl, and any other supplies related to the manufacture and distribution of said controlled substances.

o.  United States currency, precious metals, jewelry, financial instruments and stocks and bonds; and

p.  Any locked or closed containers, to include safes or lockboxes, believed to contain any of the above listed evidence

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

I, Task Force Agent, Kenneth R. Baker, being first duly sworn, hereby depose and state as follows:

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am a police officer with training and experience conducting drug investigations and am currently assigned as a Task Force Agent with the Drug Enforcement Administration (DEA).

2.      I am a Police Officer with the Cincinnati Police Department, Hamilton County, Ohio, and have been so employed since January 1996. I have been assigned as a narcotics investigator with the Narcotics section since October of 1999, and I am currently assigned as a Task Force Agent (TFA) with the Drug Enforcement Administration and have been so assigned since June of 2006. As a Task Force Agent with the DEA, my duties include the investigation of violations of federal law concerning the importation, manufacture, possession and distribution of controlled substances as defined by Title 21, United States Code, 841 including controlled substances such as heroin, fentanyl, cocaine, methamphetamine, marijuana, illicitly diverted pharmaceuticals, and other dangerous drugs. During my current assignment with the DEA, I've specialized in investigations involving narcotics trafficking and numerous criminal offenses, including those involved in the current investigation. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. Since that time I

have primarily been assigned investigations dealing with the importation and distribution of illegal drugs, which includes cocaine, "crack" cocaine, heroin, fentanyl, marijuana, methamphetamine, crystal methamphetamine, and 3, 4-methylenedioxymethamphetamine (otherwise known as MDMA or "Ecstasy"). During those investigations, I have conducted physical surveillance, electronic surveillance and wire surveillance. I have also arrested numerous individuals for various drug violations and have spoken with numerous drug dealers, gang members, and informants concerning the methods and practices of drug traffickers. These investigations have also included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction and the seizure of large amounts of U.S. currency; seizure of real property; and have involved the use of confidential informants; undercover agents; the analysis of pen registers, trap and trace devices, and toll records; physical surveillances and the execution of search warrants and arrest warrants. I have also testified in grand jury proceedings, suppression hearings, jury trials, and have written reports and analyzed documents in the course of investigations.

3. Based on my training and experience, I recognize that individuals involved in drug related activities often place assets, such as cell phones, and items bought with drug proceeds in residences, storage units and vehicles. They often place them in names other than their own to avoid detection by law enforcement. Even though these assets are in other people's names, the offenders continue to use these assets and maintain control over them. I am also aware that these individuals often utilize storage units to hide their illegal wares from law enforcement and that

these storage lockers are often rented in other people's names. I am further aware that drug traffickers commonly use multiple cellular telephones to conduct their illicit activities. Said cellular telephones are often rotated and/or replaced with new cellular telephones on a regular basis in order to remain undetected by law enforcement.

4.  Facts set forth in this affidavit are based on personal knowledge derived from my participation in this investigation and upon information and belief. I have not included each and every fact and circumstance of which I am aware. I have set forth only those facts that I believe are necessary to establish the probable cause for the issuance of the requested search warrants. The sources of my information and belief include oral reports about this and other investigations that I have received from agents of the DEA and other law enforcement authorities and enforcement conducted by agents of the DEA or other law enforcement authorities which have been reported to me either directly or indirectly.

5.  The primary targets of the investigation are:

a.  Pierre TAYLOR, a narcotics trafficker who brokers shipments of marijuana and fentanyl to be shipped via commercial airline from Las Vegas, NV to the Greater Cincinnati/Kentucky International airport to then be distributed into local communities. TAYLOR's primary residence in Cincinnati, Ohio has been identified as **120 E. Freedom Way, Apartment #334N, Cincinnati, Ohio (TARGET LOCATION 1)**. TAYLOR's identified drug stash house where he and co-conspirators package the drugs for distribution has been identified as **727 W. Martin Luther King, Apartment 707W, (Forum Apartments), Cincinnati, Ohio (TARGET LOCATION 2)**.

b. Laquana GORDON has been identified as a narcotics trafficker who helps facilitate the delivery of TAYLOR's drugs and the collection of TAYLOR's drug proceeds. In addition, GORDON registers vehicles and title's residences in her name on behalf of TAYLOR in furtherance of TAYLOR's illegal drug distribution operations. GORDON's primary residence in has been identified as **754 Chestnut Street, Cincinnati, Ohio (TARGET LOCATION 3).**

6. This affidavit is made in support of an application for a search warrant to search the following locations:

a. **120 E. Freedom Way, Apartment #334N, Cincinnati, Ohio,** (hereinafter referred to as **TARGET LOCATION 1**), fully described in attachment A, attached hereto and incorporated herein by reference, for those items listed in Attachment B, attached hereto and incorporated herein by reference.

b. **727 W, Martin Luther King, Apartment 707W, (Forum Apartments), Cincinnati, Ohio,** (hereinafter referred to as **TARGET LOCATION 2**), fully described in attachment A, attached hereto and incorporated herein by reference, for those items listed in Attachment B, attached hereto and incorporated herein by reference.

c. **754 Chestnut Street, Cincinnati, Ohio,** (hereinafter referred to as **TARGET LOCATION 3**), fully described in attachment A, attached hereto and incorporated herein by reference, for those items listed in Attachment B, attached hereto and incorporated herein by reference.

d. **2015 light blue Chevrolet Impala, Ohio license plate of HQS7019, VIN 1G1115SL7FU133306 (TARGET VEHICLE 1).**

7.     Based upon the probable cause described below, I believe that **TARGET LOCATIONS 1, 2 and 3** have been regularly utilized, and are currently being utilized, to facilitate drug trafficking in Cincinnati, Ohio, and elsewhere.  I believe that a search of **TARGET LOCATIONS 1, 2 and 3** will reveal contraband in the form of controlled substances and drug proceeds as well as additional evidence of criminal activity and conspiracy, in violation of 21 U.S.C. §§ 841(a)(1) and 846 .

## BACKGROUND OF CASE

8.     The following events form the basis for probable cause for the search and seizure warrants requested in this affidavit.

9.     During November 2018, members of the Drug Enforcement Administration (DEA) and Greater Cincinnati Airport Police Department seized several pieces of luggage containing bulk quantities of marijuana and approximately two kilograms of fentanyl.  The luggage was seized off of flights that departed from Las Vegas, Nevada and arrived at the Cincinnati/Northern Kentucky International Airport, which is located in Boone County, in the Eastern District of Kentucky. During the investigation into the seized luggage from these flights, three subjects were arrested for the trafficking/transportation of marijuana and fentanyl.  One of the arrested subjects cooperated (hereafter referred to as "SOI") with law enforcement and indicated that the marijuana and fentanyl seized were being transported to Cincinnati, Ohio under the direction and control of Pierre TAYLOR.

10.     SOI explained that TAYLOR would send individuals through the airlines with checked luggage containing large shipments of both marijuana and fentanyl.  According to the SOI, Laquana GORDON would then pick up these same couriers from the Greater Cincinnati/Northern Kentucky International Airport (CVG) upon landing and would transport the

drug filled luggage to **TARGET LOCATION 2**. The SOI stated that he/she knows this because he/she would ride in the vehicle with GORDON from the airport to the apartment. The SOI stated that GORDON would park in the rear parking lot of **TARGET LOCATION 2**. The SOI explained that he/she never went inside the building and could not say what happened once GORDON took the luggage into the apartment building. The SOI stated that after a short time period, GORDON would exit the building, return to the SOI with a quantity of marijuana as payment to the SOI for transporting the luggage from Las Vegas, NV to Cincinnati, OH. The SOI stated that he/she has been a drug courier for TAYLOR since November 2017 and estimated that he/she has made approximately nine different trips transporting drugs to Cincinnati, Ohio for TAYLOR. The SOI stated that on each trip GORDON picked up the SOI and the drugs were transported to **TARGET LOCATION 2**.

11. A DEA Administrative Subpoena was issued to the Forum Apartments which revealed that GORDON has leased **TARGET LOCATION 2** since March 15, 2018 and is current. An additional DEA Administrative Subpoena was issued to Duke Energy which revealed that GORDON is currently paying utilities at **TARGET LOCATION 2**.

12. On November 18 through 20, 2018, your affiant reviewed CVG video after several arrests were made at CVG involving fentanyl and marijuana in an attempt to identify anyone associated with picking up those who were arrested. Your affiant observed on video a vehicle registered to GORDON in the area of the CVG parking garage at the time the couriers arrived. According to GORDON's vehicle registration, the vehicle was registered to **TARGET LOCATION 3**.

13. On November 20, 2018, law enforcement knocked on the door of GORDON's residence, **TARGET LOCATION 3**, and GORDON answered the door. Law enforcement

identified themselves to GORDON and asked permission to come into the residence to speak to GORDON. GORDON agreed and escorted law enforcement inside to the living room of the residence. Agents briefly explained the investigation to GORDON and that agents had identified GORDON as picking up drug couriers from CVG and transporting the drugs to **TARGET LOCATION 2** for TAYLOR. GORDON denied any involvement in illegal drug trafficking and further denied having even been at CVG recently. Law enforcement explained that GORDON was observed on video surveillance at the airport letting drug courier Cameron MORTON put two suitcases into her Dodge Charger prior to his arrest. GORDON then stated that she did let "Cameron" (MORTON) put two suitcases into her car and further stated that MORTON left her car to retrieve additional suitcases from the terminal area of the airport. GORDON stated that when she heard the police sirens she became nervous and departed the airport parking garage with the two suitcases MORTON had placed inside her vehicle.

14.     GORDON was asked if the suitcases were still inside her residence to which GORDON replied that she had dumped the suitcases along the side of the road on Gest Street in Cincinnati, Ohio. Law enforcement asked GORDON for consent to search **TARGET LOCATION 3** to confirm that the suitcases were not inside her apartment. GORDON consented and a search of **TARGET LOCATION 3** was conducted by law enforcement. This search showed six large suitcases consistent with the ones used to transport controlled substances in this investigation, two firearms, marijuana, and a substantial amount of currency. GORDON further consented to show agents where she discarded the suitcases, but it was apparent that GORDON was attempting to mislead agents and was not being truthful about abandoning the luggage on the side of the road since she changed her story about the location. Law enforcement still accompanied

GORDON to Gest Street where she alleged that she discarded the luggage but no luggage was found in that area.

15.    On January 10, 2019, investigators from the DEA and the Northern Kentucky Drug Strike Force executed a search warrant in Hebron, Kentucky, which led to the discovery of marijuana and approximately one pound of fentanyl. As part of this investigation, law enforcement arrested an individual associated with the search warrant. That individual agreed to begin cooperating with law enforcement. He/she indicated that the source of the marijuana and fentanyl was TAYLOR.

16.    On January 22, 2019, at the direction of law enforcement, a Cincinnati Police Department Confidential Source (hereinafter referred to as "CS1") placed a consensually monitored and recorded call to TAYLOR at telephone number (937) 259-4019. During the conversation, TAYLOR indicated to CS1 that he had provided a quantity of fentanyl to a man named Vincent BROWN in the Cincinnati, Ohio area and stated that the fentanyl had been seized by law enforcement. TAYLOR explained to CS1 during the telephone conversation that even though the fentanyl was seized by law enforcement, BROWN did not owe TAYLOR any money for the drugs as it had been given to BROWN for free.

17. On the same date, CS1 placed a consensually monitored and recorded call to BROWN. During the conversation, BROWN admitted to getting the fentanyl from TAYLOR and that the fentanyl was not good quality.

18.    On January 28, 2019, law enforcement conducted a consensual encounter drug interdiction on three suspected drug couriers that had been identified as part TAYLOR's Drug Trafficking Organization. (DTO) at CVG. During the encounter, law enforcement seized approximately 131 pounds of marijuana from luggage being transported by the three couriers.

During a search of one of the courier's cellular telephones, law enforcement noted that the phone had several missed calls from TAYLOR's cellular telephone number of (937) 259-4019. This is the same telephone number CS1 utilized to make the recorded call to TAYLOR. Phone tolls indicated that after the arrest of these three couriers, TAYLOR deactivated cellular telephone number (937) 259-4019.

19.     On February 1, 2019, two more individuals were identified by law enforcement as couriers for TAYLOR'S DTO who were arriving into CVG from Las Vegas, Nevada. Agents were able to seize four suitcases containing approximately 80 pounds of marijuana. While agents were securing the luggage from the baggage claim area of the airport, both of the identified couriers became suspicious of law enforcement surveillance and fled the airport in a suspected Uber vehicle. Both subjects have since been identified and were on the flight with the seized luggage.

20.     On February 2, 2019, Antoine JONES, also identified as a co-conspirator and distributor of drugs for TAYLOR, was interdicted at the Columbus, Ohio Airport with approximately 80 pounds of marijuana. JONES arrived on a flight from Las Vegas, Nevada going to Columbus, Ohio. I believe that TAYLOR switched couriers from CVG to the Columbus, Ohio Airport due to the numerous seizures and law enforcement actions that had taken place at CVG. The luggage containing marijuana that went to Columbus, Ohio is consistent in weight and packaging as the luggage seized from couriers at CVG.

21.     On February 7, 2019, CS1 placed another recorded telephone call to TAYLOR on TAYLOR's new cellular telephone number identified as (213) 448-0654. Both CS1 and TAYLOR spoke about drugs and TAYLOR informed CS1 that he had the "gas" and could get CS1 back up to "30 or 40." After the recorded telephone call, agents conducted a debriefing with CS1 and

learned that TAYLOR meant that he had high quality marijuana for sale and that TAYLOR could give CS1 30-40 pounds of that marijuana.

22.    On February 27, 2019, JONES, who is listed above as having been interdicted at the Columbus, Ohio airport, was arrested by in Cincinnati on a Domestic Violence warrant. After JONES' arrest, your affiant reviewed all of the telephone calls JONES made from inside the Hamilton County jail. These calls are recorded per the local jail policy and notification of the calls being recorded is clearly stated to each jail caller. During a review of the calls, it was apparent to your affiant that JONES was attempting to warn TAYLOR about a federal investigation that was taking place against TAYLOR. This was based on comments that JONES made to others in the recorded calls. Soon after these calls to TAYLOR, your affiant noted that TAYLOR discontinued using (213) 448-0654.

23.    On March 12, 2019, CS1 met with TAYLOR at 2315 Henrianne Court, Cincinnati, Ohio. According to CS1, TAYLOR informed CS1 that he had changed his telephone number to (213) 359-0062 and was planning on traveling to Las Vegas, Nevada in the next "couple of days" to arrange another shipment of illegal drugs to be shipped to the Cincinnati, Ohio area. As a result of this meeting, on March 14, 2019, your affiant obtained a court-authorized GPS phone search warrant for TAYLOR's new telephone number.

24.    On March 15, 2019, Cameron JOHNSON and Brandi BRIGHT, identified as drug couriers for TAYLOR, were interdicted at CVG while transporting marijuana and THC cartridges. During a post-arrest statement to law enforcement, BRIGHT explained that she had met TAYLOR in the fall of 2018 at 5923 Yucca House Avenue, Las Vegas, Nevada. According to BRIGHT, she was instructed to retrieve a suitcase containing marijuana from the garage of 5923 Yucca House Avenue, Las Vegas, Nevada and to transport the suitcase to Cincinnati, Ohio for a payment of

$1,000.00 dollars. In a post-arrest statement to law enforcement, JOHNSON explained that he had been transporting suitcases of illegal drugs on behalf of TAYLOR since August 2018. JOHNSON stated that he would travel from Las Vegas, NV to Cincinnati, OH with the drugs and estimated that he has made approximately six trips for TAYLOR.

25.     In late March 2019, law enforcement learned that TAYLOR traveled back from Las Vegas to Cincinnati. A review of TAYLOR's cellular telephone location data revealed that TAYLOR's cellular telephone was located/placed in the area of 2nd Street and Walnut Street, Cincinnati, Ohio.

26.     On March 30, 2019, law enforcement located a **2015 light blue Chevrolet Impala, Ohio license plate of HQS7019, VIN 1G1115SL7FU133306, (TARGET VEHICLE 1)** parked in the garage of the Guild apartments located at 120 Freedom Way Cincinnati, Ohio. This vehicle is registered to Aleah JACKSON, 10902 Crystal Hill Court, Cincinnati, Ohio. TAYLOR has been observed in the past by law enforcement utilizing this vehicle.

27.     On April 1, 2019, a search warrant was granted by the Honorable Judge Robert Ruehlman of the Hamilton County Common Pleas Court for the installation of a GPS device on **TARGET VEHICLE 1**.

28.     Over the next several days, your affiant observed the movements of TAYLOR's cellular telephone via the court authorized cellular telephone GPS search warrant and the authorized GPS search warrant for **TARGET VEHICLE 1**. Your affiant observed both devices move at the same times and travel into the same areas.

29.     On April 1, 2019, law enforcement issued a DEA Administrative Subpoena to property managers of Current at the Banks Apartments. According to the subpoena, Laquana GORDON just rented **TARGET LOCATION 1** on February 1, 2019. GORDON's leasing

agreement listed GORDON as paying for parking space #200, the same parking space TAYLOR utilizes to park **TARGET VEHICLE 1**. The management also identified TAYLOR as recently being observed entering the apartment building utilizing the garage entrance.

30. Based on the investigation conducted by your Affiant, and other members of law enforcement, there is probable cause to believe that TAYLOR, GORDON, and 10 other co-conspirators are involved in the ongoing illegal distribution of marijuana and fentanyl from Las Vegas, Nevada to Cincinnati, Ohio, in violation of 21 U.S.C. §§ 841(a)(1) and 846. I am aware that marijuana and fentanyl distributors commonly maintain several residences in order to conceal and protect illegal drugs as well as illegally obtained U.S. currency obtained from this lucrative illegal enterprise. As a result, there is also probable cause to believe that searches of the **TARGET LOCATIONS 1-3 and TARGET VEHICLE** (more particularly described in Attachment A) will uncover evidence of these crimes; contraband, fruits of these crimes, and other items illegally possessed; and property used in committing these crimes (more particularly described in Attachment B).

## CONCLUSION

32. Based upon the facts described in this affidavit, I believe that **TARGET LOCATIONS 1-3 and TARGET VEHICLE 1** are utilized by TAYLOR, GORDON and members of the DTO in furtherance of ongoing bulk narcotics activity. TAYLOR and the other members of his DTO utilize the **TARGET LOCATIONS 1-3** as "stash houses" to conduct their drug trafficking enterprise and store contraband and drug proceeds. DTO members often utilize "stash house" locations to store large amounts of drugs and packaging to avoid detection by law enforcement. I believe that DTO members keep large amounts of controlled substances, materials used for packaging, weighing, and processing drugs, cash and other proceeds, firearms,

communication devices, and drug sales records inside **TARGET LOCATIONS 1-3 and TARGET VEHICLE 1**. Investigators know from their training and experience that drug traffickers will also keep drug proceeds, cellular telephones, scales, packaging materials, address books, buy/owe sheets, and other indicia that provide investigators with evidence of ongoing criminal conspiracies inside locations such as **TARGET LOCATIONS 1-3 and TARGET VEHICLE 1** and that probable cause exists to believe these items will be found there.

_____
Kenneth R Baker
Task Force Officer
Drug Enforcement Administration

Subscribed to and sworn before me on this ___9___ day of April, 2019.

HON. KAREN L. LITKOVITZ
United States Magistrate Judge

## ATTACHMENT A
## PREMISES TO BE SEARCHED
## LOCATION #1



__120 E. Freedom Way apartment #334N Cincinnati, Ohio,__ Hamilton County, City of Cincinnati, Ohio 45202, further described as a five story multi family structure constructed of tan brick. The common entry door is located facing 2nd Street. The building numbers are displayed above the front entry door in white numbers parking lot. The apartment door to be entered is located on the 3rd floor described as a grey door. Clearly displayed to the left of the apartment door on the hallway wall is the numbers 334 in white numbers.

## ATTACHMENT A
## PREMISES TO BE SEARCHED
## LOCATION #2



**<u>727 W Martin Luther King apartment 707W (Forum Apartments),</u>** Hamilton County, City of Cincinnati, Ohio 45220, further described as a ten story multi family structure constructed of red brick. The common entry door is located facing the parking lot. The building numbers are displayed above the front entry door in white numbers parking lot. The apartment door to be entered is described as a tan door with a gold knocker positioned in the center of the door. Clearly displayed to the right of the apartment door on the hallway wall is the numbers 707.

## ATTACHMENT A
## PREMISES TO BE SEARCHED

## LOCATION #3



**754 Chestnut Street Cincinnati Ohio 45203**, Hamilton County, City of Cincinnati, Ohio 45203, further described as a two story single family structure constructed of red brick.  The common entry door is located facing Chestnut Street.  The building numbers are displayed on a blue door with the numbers 754 clearly displayed on the center of the door.

# ATTACHMENT B

a. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

b. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs;

c. Cellular telephones, digital telephones, car telephones, or other communications devices which evidence participation in a conspiracy to distribute controlled substances.

d. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

e. Any computer equipment, digital device, magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and any other digital device capable of accessing the internet and capable of being used to commit or further the crimes outline above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes.

f. Financial instruments purchased with currency derived from the sale of controlled substances, including travelers' checks, bonds, stock certificates, cashier's checks, and certificates of deposit;

g. Money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry controlled substances;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

i. Records, items and documents reflecting travel for the purpose of participating in drug trafficking, including airline tickets, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations;

j. Handguns, shotguns and other firearms, and ammunition, which may be used to facilitate the distribution or possession with intent to distribute controlled substances;

k. Indicia of ownership and use of the vehicles, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, keys and bank account records, registration, title, insurance, and traffic tickets;

l. Photographs or video movies of drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

m. Controlled substances, including, but not limited to, fentanyl, heroin, ketamine, or acetyl fentanyl.

n. Drug paraphernalia, which can be used to store, package, weigh, dilute, and ingest controlled substances; equipment pertaining to fentanyl, heroin, ketamine, or acetyl fentanyl, and any other supplies related to the manufacture and distribution of said controlled substances.

o. United States currency, precious metals, jewelry, financial instruments and stocks and bonds; and

p. Any locked or closed containers, to include safes or lockboxes, believed to contain any of the above listed evidence